C/w.
5·22·19



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

Christina A. Hoffman
Assistant United States Attorney
Christina.hoffman@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4871
MAIN: 410-209-4800
FAX: 410-962-3124

May 21, 2019

Julie Marie Reamy, Esq.
Julie M. Reamy, Attorney at Law, LLC
115 W. Saratoga Street
Baltimore, MD 21201

      Re:    United States v. Jamal Jackson,
               Criminal No. RDB-19-0144 (D. Md.)

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Jamal Jackson (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by June 14, 2019, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.     The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with conspiracy to distribute heroin, in violation of 21 U.S.C. § 846; and Count Four of the Indictment, which charges with the Defendant with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offenses

2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

1

Count One

That from in or about November 2018 through on or about March 7, 2019, in the District of Maryland and elsewhere:

a. an agreement existed between two or more persons to violate the drug laws of the United States by distributing or possessing with the intent to distribute one kilogram or more of heroin; and

b. the Defendant knowingly entered into that agreement.

Count Four

On or about March 7, 2019, in the District of Maryland:

a. the Defendant committed a drug trafficking crime for which he might be prosecuted in a Court of the United States, namely, conspiracy to distribute and possess with intent to distribute heroin, as charged in Count One of the indictment; and

b. the Defendant knowingly possessed a firearm in furtherance of the commission of the crime charged in Count One of the indictment.

Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|---|---|---|---|---|---|---|
| 1 | 21 U.S.C. § 841(b)(1)(A) | 10 years | Life | Life | $10,000,000 | $100 |
| 4 | 18 U.S.C. § 924(c) | 5 years consecutive | Life | 5 years | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any

3

defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d.    The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e.    If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g.    If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of

4

1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.  a.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that the applicable base offense level with respect to Count One is a **level 32** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(4) because the offense involved at least three kilograms of heroin but less than ten kilograms of heroin.

   b.  There is a **two-level increase** in the offense level pursuant to U.S.S.G. § 2D1.1(b)(2) because the defendant made a credible threat to use violence.

   c.  The total adjusted offense level is **34**.

   e.  With regard to Count Three, the parties stipulate and agree that the requisite sentence is at least five years imprisonment, consecutive to any term of imprisonment imposed in connection with Count One, pursuant to 18 U.S.C. § 924(c)(1)(A)(i).

   f.  This Office does not oppose a **two-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **one-level reduction** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

5

8.   Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.   At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.   In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a.   The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

   b.   The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      (i)   The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

      (ii)   This Office reserves the right to appeal any sentence below a statutory minimum;

   c.   The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses, including but not limited to: a Keltec 9 millimeter handgun bearing serial number AUY36 loaded with 10 rounds of ammunition.

b. The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

c. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

d. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

12. a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the

Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

13. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

14. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: *Christina Hoffman*
Christina A. Hoffman
Peter J. Martinez
Assistant United States Attorneys

8

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6-26-19
Date

Jamal Jackson

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

6/26/19
Date

Julie Reamy, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

On February 12, 2019, a Baltimore Police Department undercover officer (UC-1) met with the Defendant, Cortez Weaver, and Kevin Brooks, at a location in Baltimore City to discuss a robbery opportunity. UC-1 wore a recording device to capture his interactions with the Defendant and his co-conspirators. UC-1 explained to the group that he was a drug trafficker who was interested in robbing his source of supply of multiple kilograms of heroin.

The Defendant, Weaver, and Brooks indicated that they were interested in assisting UC-1, discussed how the robbery would be committed, and discussed how they would resell the stolen heroin. All three asked questions or made observations regarding the logistics of the robbery. For example, the Defendant asked whether there were cameras in the area of the stash house where the robbery was going to take place. With respect to the individuals guarding the stash house, the Defendant stated, "They might gotta go. We gonna shoot niggas coming through the door." Brooks observed that "the biggest problem is getting in," *i.e.*, gaining entry into the stash house. He further assured UC-1 that "a nigga ain't gonna do nothing that's gonna jeopardize you."

On March 6, 2019, UC-1 again met with the Defendant, Weaver, and Brooks at a location in Baltimore City to discuss the robbery opportunity. UC-1 wore a recording device. After the Defendant arrived, UC-1 again discussed the robbery logistics. During the discussion, Weaver described his plan to neutralize the three individuals whom he expected to be guarding the stash house. "One nigga grab him at the door," Weaver said. "One nigga grab the nigga in the middle. The other nigga in back." The Defendant later stated, "We ready. We ready. We already got enough artillery to do what the fuck we said then. We gonna get in there." The Defendant also stated that following the robbery, he and his associates would "drop the three"—that is, they would "cut" the heroin with adulterants—before selling it in the streets. Throughout the conversation, Brooks was listening attentively and nodding his head.

On the morning of March 7, 2019, UC-1 made plans to meet the Defendant, Weaver, and Brooks in the parking lot of a Royal Farms in Baltimore City in order to commit the robbery. The Defendant, Weaver, and Brooks arrived in a black Nissan Maxima driven by Jermaine Sumpter. Weaver exited the Nissan Maxima and accompanied UC-1 to a nearby storage facility where the group planned to split the proceeds of the robbery once it was completed. The Defendant, Brooks, and Sumpter waited in Sumpter's vehicle at the Royal Farms.

At the storage facility, a team of law enforcement officers approached UC-1's vehicle and placed Weaver under arrest. During a search of Weaver's person, the officers recovered a loaded

10

Ruger .357 revolver, 11 pink-top vials containing suspected cocaine, and a mask. They also recovered a pair of black woolen gloves from the passenger area of UC-1's vehicle where Weaver had been sitting.

Meanwhile, a second team of law enforcement officers approached the black Nissan Maxima in the Royal Farms parking lot and placed the Defendant, Brooks, and Sumpter under arrest. At the time of the arrest, Sumpter was in the driver's seat of the vehicle, Brooks was in the rear driver's side seat, and the Defendant was in the rear passenger side seat. During searches incident to arrest, officers recovered black masks from both the Defendant and Brooks. From the rear passenger side area (where the Defendant had been sitting), the officers recovered a pair of black woolen gloves and a Keltec 9 millimeter handgun bearing serial number AUY36. The handgun was loaded with 10 rounds of ammunition, one of which was in the chamber. From the rear driver's side area (where Brooks had been sitting), the officers recovered a pair of black woolen gloves.

The parties agree and stipulate that the Defendant agreed with his co-conspirators to take at least three kilograms of heroin from UC-1's source of supply through the use of force, violence, and fear. Heroin is a commodity manufactured outside the state of Maryland and that travels in interstate commerce. Therefore, the robbery of the heroin from the source of supply would have interfered with the interstate commercial activity of narcotics trafficking. Additionally, the Defendant was in possession of a loaded firearm, and the Defendant intended that the firearm would be used in the commission of the robbery.

SO STIPULATED:

_____
Christina A. Hoffman
Peter J. Martinez
Assistant United States Attorneys

_____
Jamal Jackson
Defendant

_____
Julie Reamy, Esq.
Counsel for Defendant